# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
# MARTINSBURG

**RONNIE JOE WILLIAMS, JR.,**

    Plaintiff,

v.                                      **CIVIL ACTION NO.: 3:14-CV-24 (GROH)**

**COMMISSIONER OF SOCIAL SECURITY,**

    Defendant.

## MEMORANDUM OPINION AND ORDER ADOPTING REPORT AND RECOMMENDATION

This matter is before the Court for consideration of the Report and Recommendation ("R&R") of United States Magistrate Judge James E. Seibert. By Standing Order, this action was referred to Magistrate Judge Seibert for submission of a proposed R&R. Magistrate Judge Seibert filed his R&R [ECF 19] on January 7, 2015. The R&R recommends that the Court deny Plaintiff Ronnie Joe Williams, Jr.'s Motion for Summary Judgment [ECF 14] and grant the Commissioner of Social Security's Motion for Summary Judgment [ECF 16] because substantial evidence supported the Administrative Law Judge's ("ALJ") denial of Williams' application for disability insurance benefits.

## I. Background

On February 23, 2011, Ronnie Joe Williams, Jr. applied for disability insurance benefits, alleging that he had a disability beginning on February 22, 2011. Williams' application was denied initially and on reconsideration. Williams requested a hearing before an ALJ. On August 17, 2012, the ALJ held a hearing. The ALJ issued a decision

1

denying Williams benefits on August 31, 2012. The Appeals Council denied Williams's request for review, rendering the ALJ's decision the final decision of the Commissioner.

On February 24, 2014, Williams filed this action under 42 U.S.C. § 405(g) for judicial review of the Commissioner's decision denying his claim for disability insurance benefits. After submitting the administrative record, both parties moved for summary judgment. Williams requests summary judgment on two grounds. First, he contends that substantial evidence does not support the ALJ declining to find his voice loss a severe impairment. Second, he avers that substantial evidence does not support the finding of no disability that the ALJ based on the testimony of a vocational expert ("VE") because the VE testified in response to a hypothetical that included a vague functional limitation–"work should consist primarily of gross manipulation." The Commissioner counters that substantial evidence supports the ALJ's decision.

On January 7, 2015, the magistrate court issued an R&R recommending that the Court grant summary judgment for the Commissioner. Williams timely objected to the R&R, and the Commissioner responded to his objections.

## II. Standards of Review

### A. Review of the R&R

This Court must review *de novo* those portions of the magistrate judge's findings to which Williams objects. 28 U.S.C. § 636(b)(1)(C). Failure to file objections, however, permits the district court to review the R&R under the standards that the district court believes are appropriate, and, if parties do not object to an issue, the parties' right to *de novo* review is waived as to that issue. See Webb v. Califano, 468 F. Supp. 825 (E.D. Cal. 1979). Thus, this Court will review *de novo* those portions of the R&R to which Williams

objects and the remaining portions of the R&R for clear error.

**B.     Summary Judgment**

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). A genuine issue exists "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). Thus, the Court must conduct "the threshold inquiry of determining whether there is the need for a trial–whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." Id. at 250.

The party opposing summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). That is, once the movant has met its burden to show an absence of material fact, the party opposing summary judgment must come forward with affidavits or other evidence demonstrating there is a genuine issue for trial. Fed. R. Civ. P. 56; Celotex Corp., 477 U.S. at 323-25; Anderson, 477 U.S. at 248. "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." Anderson, 477 U.S. at 249 (citations omitted). A motion for summary judgment should be denied "if the evidence is such that conflicting inferences may be drawn therefrom, or if reasonable men might reach different conclusions." Phoenix Savs. & Loan, Inc. v. Aetna Cas. & Sur. Co., 381 F.2d 245, 249 (4th Cir. 1967); see also Anderson, 477

U.S. at 253 (noting that "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge").

### C. Review of the ALJ's Decision

The Social Security Act limits this Court's review of a final decision of the Commissioner to: (1) whether substantial evidence supports the Commissioner's decision, Richardson v. Perales, 402 U.S. 389, 390 (1971), and (2) whether the Commissioner applied the correct legal standards. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). The phrase "supported by substantial evidence" means "more than a mere scintilla" and "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Perales, 402 U.S. at 401 (citation and quotation marks omitted).

A reviewing court must not re-weigh the evidence or substitute its judgment for that of the Commissioner, so long as that decision is supported by substantial evidence. Hays, 907 F.2d at 1456. Ultimately, it is the duty of the ALJ reviewing a case, not the responsibility of the Court, to make findings of fact and to resolve conflicts in the evidence. King v. Califano, 599 F.2d 597, 599 (4th Cir. 1979) ("This Court does not find facts or try the case *de novo* when reviewing disability determinations.").

### III. The ALJ's Evaluation Process

To determine whether a claimant is disabled, the ALJ conducts a five-step evaluation process. 20 C.F.R. § 404.1520(a)(4). If the ALJ finds that the claimant is disabled or not disabled at a step, the analysis ends. Id. The steps are:

Step One: Determine whether the claimant is engaging in substantial gainful activity;

Step Two: Determine whether the claimant has a severe impairment;

Step Three: Determine whether the claimant has a listed impairment (20 C.F.R. Part 404, Subpart P, Appendix 1) and conduct a Residual Functional Capacity ("RFC") assessment;

Step Four: Consider the RFC assessment to determine whether the claimant can perform past relevant work; and

Step Five: Consider the RFC assessment, age, education, and work experience to determine whether the claimant can perform any other work.

Davidson v. Astrue, Civil Action No. 2:11-CV-55, 2012 WL 667296, at *3 (N.D.W. Va. Feb. 28, 2012) (citing 20 C.F.R. § 404.1520(a)(4)).

At step one, the ALJ found Williams "has not engaged in substantial gainful activity" since the alleged onset date. R. at 60. For step two, the ALJ determined that Williams "had the following severe impairments: severe obstructive and restrictive lung disease; old nonunion styloid fracture of the right wrist; spur formation of the bilateral elbows/chronic left tennis elbow; diagnosis of essential/intentional tremors; and obesity." Id. at 61.

At step three, the ALJ found Williams "has not had an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1." Id. Then, the ALJ concluded that Williams had the following RFC:

> Since February 22, 2011, the claimant has had the residual functional capacity to perform a range of work activity that: requires no more than a light level of physical exertion; affords a sit/stand option without breaking task, with the person having the ability to sit, stand and walk for at least 15 minutes at a time each; requires no climbing of ladders, ropes or scaffolds, or more than occasional balancing, climbing ramps/stairs, crawling, crouching, kneeling and stooping; to the maximum extent possible involves walking on level, even surfaces; work should consist primarily of gross manipulation; and avoids exposure to temperature extremes, wet or humid conditions, environmental pollutants, or hazards (e.g. dangerous machinery, unprotected heights) . . . .

Id. at 62. At step four, the ALJ determined that Williams could not perform past relevant

work. Id. at 65. Next, the ALJ found no disability at step five, stating that, "considering [Williams'] age, education, work experience, and [RFC], there are jobs that exist in significant numbers in the national economy that [Williams] can perform." Id. at 66.

## IV. Discussion

The R&R recommends granting the Commissioner's Motion for Summary Judgment. Specifically, it recommends concluding that substantial evidence supports the ALJ finding Williams' alleged voice loss is not a severe impairment and reaching an RFC limiting Williams to work consisting "primarily of gross manipulation."

### A. Voice Loss Impairment

Williams does not object to the recommendation that substantial evidence supports the ALJ finding that his alleged voice loss was not a severe impairment. Thus, the Court reviews this recommendation for clear error and finds none.

### B. "Primarily of Gross Manipulation" RFC Limitation

Williams objects that the RFC limiting him to work consisting "primarily of gross manipulation" was impermissibly vague and, as such, resulted in error on two grounds. Specifically, Williams asserts that the ALJ needed to outline how much fine manipulation he can perform. He does not argue that the ALJ erred in finding that he can perform work requiring both gross and fine manipulation.

First, Williams argues that the vagueness of this limitation indicates that the ALJ did not perform the function-by-function analysis ALJs must conduct to formulate an RFC pursuant to Social Security Ruling 96-8p. He supports this argument with Young v. Astrue, 771 F. Supp. 2d 610, 621 (S.D.W. Va. 2011), where the court held that an ALJ failing to include "the additional functional limitations or restrictions in [the claimant's] RFC

6

assessment constituted a significant omission that irreparably skewed the decision-making process."

Social Security Ruling 96-8p states that "[t]he RFC assessment must first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis, including the functions" listed in paragraphs (b) through (d) of 20 C.F.R. § 404.1545 and § 416.945. SSR 96-8p, 1996 WL 374184, at *1 (July 2, 1996). Paragraphs (b) through (d) enumerate three categories of functions, a claimant's: (1) physical abilities, including manipulative functions; (2) mental abilities; and (3) "other work-related abilities affected by impairments." Mascio v. Colvin, 780 F.3d 632, 636 n.5 (4th Cir. 2015) (quoting 20 C.F.R. § 404.945(b)-(d)). Only after the ALJ conducts the function-by-function analysis may he express the RFC "in terms of the exertional levels of work, sedentary, light, medium, heavy, and very heavy." SSR 96-8p, 1996 WL 374184, at *1. The Ruling further provides "that the [RFC] 'assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations).'" Mascio, 780 F.3d at 636 (quoting SSR 96-8p, 1996 WL 374184, at *7).

Here, the "primarily of gross manipulation" limitation does not evidence that the ALJ did not conduct the function-by-function analysis. To the contrary, this limitation is a function that the ALJ considered as part of that analysis. The ALJ notes in his decision that Williams testified that he "cannot do fine (manipulation) work." R. at 62-63. He then discredits that statement based on Williams' testimony that he fished because fishing involves using one's hands to do fine work (e.g., by tying on hooks). Id. at 63. Thus, the ALJ complied with Social Security Ruling 96-8P because he considered Williams'

7

manipulation abilities based on the evidence of record, provided the requisite narrative discussion of those abilities and included a manipulation limitation in the RFC.

The case Williams relies on for this argument–<u>Young</u> –is distinguishable. In <u>Young</u>, the RFC stated that the claimant could "perform the 'full range of sedentary work,' except for certain limitations," but did not articulate those limitations. 771 F. Supp. 2d at 619. The court held that substantial evidence did not support the sedentary exertional level because the ALJ had not stated any functional limitations. <u>Id.</u> at 621. The opposite is true here. The ALJ outlined Williams' functional limitations, including the manipulation limitation, to support his finding that Williams could do work requiring "no more than a light level of physical exertion." R. at 62. Thus, rather than supporting Williams' argument, <u>Young</u> demonstrates that the ALJ complied with Social Security Ruling 96-8p. <u>See</u> <u>Berry v. Colvin</u>, Civil Action No. 3:14-9859, 2015 WL 1506128, at *12 (S.D.W. Va. Mar. 31, 2015) (distinguishing <u>Young</u> because, in addition to identifying the exertional category, the ALJ "specifically delineated nonexertional limitations" that the record supported). Accordingly, the ALJ properly performed the function-by-function analysis and, by extension, substantial evidence supports the RFC.

Williams' second argument centers on the ALJ including the manipulation limitation in the hypothetical to the VE. The ALJ asked the VE the following hypothetical:

> All right, then let me ask you to assume a hypothetical individual of the claimant's age, educational background and work history who could perform a range of light work, could perform postural movements occasionally, except could not climb ladders, ropes, or scaffolds to the maximum extent possible, should walk on level and even surfaces. The work should consist primarily of gross manipulation. The person should not be exposed to temperature extremes, whether humid conditions, environmental pollutants or hazards. Would there be any work in the regional or national economy that such a person could perform?

8

R. at 86.  The VE responded:

> There would be the work of a [storage facility rental clerk].  This is a light and unskilled job.  In the local economy, there are 185 jobs.  In the national economy, 179,000 jobs.  There would be the work of an office helper.  In the local economy, there are 85 jobs.  In the national economy 86,200.  There would be the work of a mail clerk.  This would be an individual working in the mail room of a business as opposed to working for the postal service.  In the local economy, there are 60 jobs.  In the national economy 70,800.

Id. at 86-87.  In his decision, the ALJ stated that the VE had testified that Williams could perform the requirements of these jobs.  Id. at 66.  Then, citing the VE's testimony, the ALJ concluded that jobs exist in significant numbers in the national economy that Williams can perform and accordingly found Williams not disabled at step five.  Id.

Williams argues that, because the mail clerk and office helper jobs require the ability to finger (a fine manipulation skill),[1] one cannot determine whether the VE's testimony that he could perform these jobs was consistent with the manipulation abilities the ALJ intended the RFC to reflect.  Williams maintains that, in light of the possibility that this limitation may have been unclear to the VE, the VE's testimony cannot support the finding of no disability.

Essentially, Williams is challenging the hypothetical question.  See White v. Colvin, Civil Action No. CBD-12-2553, 2013 WL 4026921, at *5 (D. Md. Aug. 6, 2013) (considering whether hypothetical was proper where claimant argued the ALJ erred by not defining for the VE what the functional limitation "simple to moderately complex tasks" meant); Burnette v. Astrue, Civil Action No. 2:08-cv-009, 2009 WL 863372, at *4 (E.D.N.C. Mar. 24, 2009) (finding hypothetical was adequate where claimant argued it included impermissibly vague

---

[1] Williams also asserts handling may involve fine manipulation, but courts have routinely noted handling requires gross manipulation.  See, e.g., Hall v. Harris, 658 F.2d 260, 263 (4th Cir. 1981) (noting handling as a type of gross manipulation when reviewing a physician's testimony); Washington v. Astrue, 698 F. Supp. 2d 562, 566 n.1 (D.S.C. 2010).

9

terms).

A VE helps an ALJ "determin[e] whether there is work available in the national economy" a claimant can perform. Walker v. Brown, 889 F.2d 47, 50 (4th Cir. 1989). For a VE's "opinion to be relevant or helpful, it must be based upon a consideration of all other evidence in the record and it must be in response to proper hypothetical questions which fairly set out all of claimant's impairments." Id. (citations omitted). The ALJ has "great latitude in posing hypothetical questions and need only pose those that are based on substantial evidence and accurately reflect the plaintiff's limitations." Farnsworth v. Astrue, 604 F. Supp. 2d 828, 853 (N.D.W. Va. 2009) (internal citations omitted). A hypothetical question is unimpeachable if it adequately reflects an RFC for which the ALJ had sufficient evidence. Johnson v. Barnhart, 434 F.3d 650, 659 (4th Cir. 2005). The hypothetical must identify the "physical and mental limitations imposed by the claimant's medical impairment(s)." 20 C.F.R. § 416.960(b)(2); see also Russell v. Barnhart, 58 F. App'x 25, 30 (4th Cir. 2003). It "need not reference each of the claimant's impairments or diagnoses by name so long as it adequately reflects the limitations caused by those impairments." Brown v. Astrue, Civil Action No. CBD-10-1238, 2013 WL 937549, *6 (D. Md. Mar. 8, 2013). The ALJ also may "translate the claimant's medical impairments into functional limitations from which the vocational expert can determine whether work is available." Id.

Here, "primarily gross manipulation" adequately communicated to the VE that Williams could perform work that involved some fine manipulation but mostly gross manipulation. See Burnette, 2009 WL 863372, at *4. Put another way, the hypothetical conveyed the key information underlying this limitation–that Williams had some difficulty with fine manipulation but could still perform work requiring it. See id. (holding limitation

in hypothetical was not impermissibly vague because it "capture[d] the necessary information . . . and communicate[d] it to the VE"). The fact that the VE, who is "highly trained and experienced," did not express any confusion regarding this limitation reinforces that the VE understood what "primarily gross manipulation" meant. See White, 2013 WL 4026921, at *5 (citation and quotation marks omitted) (rejecting argument that ALJ erred by not further defining a functional limitation in a hypothetical because the claimant did not object to the question at the hearing and the VE did not indicate confusion about its meaning). Thus, the hypothetical was adequate and the ALJ properly relied on the VE's testimony.[2]

Accordingly, the Court overrules the Plaintiff's objections because the ALJ complied with Social Security Ruling 96-8p in formulating the RFC and substantial evidence (the VE's testimony in response to a proper hypothetical) supports the finding of no disability.

## IV. Conclusion

Upon review of the above, the Court **OVERRULES** the Plaintiff's objections. It is the opinion of this Court that the Report and Recommendation should be, and is, hereby **ORDERED ADOPTED**. For the reasons more fully stated in the Report and Recommendation, the Court **GRANTS** the Commissioner's Motion for Summary Judgment and **DENIES** the Plaintiff's Motion for Summary Judgment.

Accordingly, the Court further **ORDERS** that this matter be **DISMISSED WITH PREJUDICE** and that it be **STRICKEN FROM THE DOCKET OF THIS COURT**.

---

[2] In addition, the DOT job descriptions for mail clerk and office helper show that the VE's testimony was consistent with the RFC. A mail clerk and office helper perform fingering "1/3 to 2/3 of the time." DOT §§ 209.687-026, 239.567-010. Because these jobs require fingering only some of the time, one could reasonably view fingering as not the primary type of manipulation they require.

11

The Clerk is **DIRECTED** to enter judgment in favor of the Commissioner.

The Clerk is directed to transmit copies of this Order to all counsel of record.

**DATED**: May 15, 2015

                                                    GINA M. GROH
                                                  CHIEF UNITED STATES DISTRICT JUDGE